UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARLOS I. TIRADO-NEGRON, | |
| Plaintiff, | CIVIL ACTION NO. 3:22-cv-01994 |
| v. | (SAPORITO, C.M.J.) |
| MARTIN J. O'MALLEY,[1] Commissioner of Social Security, | |
| Defendant. | |

## MEMORANDUM

In this matter, the plaintiff, Carlos I. Tirado-Negron, seeks judicial review of the final decision of the Commissioner of Social Security denying his application for supplemental security income, pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

---

[1] Martin J. O'Malley became the Commissioner of Social Security on December 20, 2023. He has been automatically substituted in place of the original defendant, Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

## I.   BACKGROUND

On March 25, 2019, Tirado-Negron protectively filed an application for supplemental security income, asserting a disability onset date of March 25, 2019. His claim was initially denied by state agency reviewers on September 3, 2019, and upon reconsideration on March 10, 2020. The plaintiff then requested an administrative hearing.

A telephone hearing was subsequently held on October 20, 2021, before an administrative law judge, Richard E. Guida (the "ALJ"). In addition to the plaintiff himself, the ALJ received testimony from an impartial vocational expert, Paul A. Anderson. The plaintiff was represented by counsel during the hearing.

On October 27, 2021, the ALJ denied Tirado-Negron's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Tirado-Negron was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Tirado-Negron had not engaged in substantial gainful activity since his application date. At step two, the ALJ found that Tirado-Negron had the

severe impairments of: degenerative disc disease; tendinitis of the right shoulder; osteoarthritis; diabetes; diverticulitis; GERD; hernias; migraines; obesity; major depressive disorder; and anxiety disorder. At step three, the ALJ found that Tirado-Negron did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four of the sequential-evaluation process, the ALJ assessed Tirado-Negron's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Tirado-Negron had the RFC to perform less than the full range of light work, as defined in 20 C.F.R. § 416.967(b)[2], with the following limitations:

> He is capable of occasional postural movements except never use ladders, ropes, and scaffolds. Work that is limited to simple and routine tasks, involving only simple, work-related decisions, and with few, if any, workplace changes, no production pace work, and only

---

[2] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

> occasional interaction with supervisors, co-workers, and the public.

(Tr. 30.)

In making these factual findings regarding Tirado-Negron's RFC, the ALJ considered his symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. § 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. § 416.920c.

At step four, the ALJ found that Tirado-Negron is unable to perform any of his past relevant work as a warehouse worker or hand packager, as actually or generally performed.

At step five, the ALJ concluded that Tirado-Negron was capable of performing other work that exist in significant numbers in the national economy. Based on his age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Tirado-Negron was capable of performing the requirements of representative occupations such as: bakery worker (DOT #524.687-022);

bottling line attendant (DOT # 920.687-042); or cafeteria attendant (DOT # 311.677-010). Based on this finding, the ALJ concluded that Tirado-Negron was not disabled for Social Security purposes.

The plaintiff sought further administrative review of his claim by the Appeals Council, but his request was denied on October 28, 2022, making the ALJ's October 2021 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed his complaint in this court on December 16, 2022. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security supplemental security income administrative decisions).

Tirado-Negron asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to properly evaluate medical opinions, including the opinion of a consultative examining nurse practitioner and a joint opinion by a treating physician and treating physical therapist, as well as prior administrative findings, including the medical opinions of non-examining state agency medical consultants; (2) the ALJ failed to properly consider his obesity impairment, as required by Social Security Ruling 19-2p; and (3) the ALJ failed to properly consider Tirado-Negron's subjective allegations regarding his symptoms.

Finding the first issue dispositive of this appeal and remanding the case to the agency to properly address the ALJ's duty to address the evaluation of medical opinions and prior administrative findings, including the medical opinions of non-examining state agency medical consultants, we do not reach the other issues. "A remand may produce different results on plaintiff's application, making discussion of the remaining claims moot." *Upshur v. Colvin*, 200 F. Supp. 3d 503, 513 n.3 (E.D. Pa. 2016).

The plaintiff contends that the ALJ's decision is not supported by

substantial evidence because the ALJ erred in his evaluation of medical opinions and prior administrative findings. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & N.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may

reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed his administrative claim for benefits in March 2019. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case. "The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481

(W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. § 416.920c(b). If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the

claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. § 416.920c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 416.920c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. § 416.920c(c)(1) (supportability), *and id.* § 416.920c(c)(2) (consistency), *with id.* § 416.927(c)(3) (supportability), and *id.* § 416.927(c)(4) (consistency).[3] An ALJ is specifically required to address

---

[3] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence
*(continued on next page)*

these two factors in his or her decision. *See* 20 C.F.R. § 416.920c(b)(2); *see also Densberger*, 2021 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. § 416.920c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 416.920c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

The ALJ considered multiple functional capacity evaluations containing conflicting medical opinions with respect to Tirado-Negron's exertional limitations.[4] The ALJ considered an August 2019 opinion by a

---

from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

[4] Because of his age and work experience, the plaintiff's exertional capacity is determinative of his claim for benefits. At step five of the sequential review, the Commissioner bears the burden of showing that, considering the claimant's age, work experience, and RFC, he or she can perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(v). To assist in this analysis, the agency has promulgated a set of Medical-Vocational Guidelines, 20 C.F.R.

*(continued on next page)*

consultative examining internal medicine nurse practitioner, Karena Hammon, N.P., who found that Tirado-Negron was capable of only occasionally lifting and carrying up to ten pounds, which corresponds to a capacity to perform sedentary work; the ALJ found this opinion "not . . . persuasive." (Tr. 35–36; *see also* Tr. 694–99.) The ALJ considered the opinions of two non-examining state agency medical consultants, recorded in August 2019 and March 2020, who found that Tirado-Negron was capable of occasionally lifting or carrying up to twenty pounds and frequently lifting or carrying up to ten pounds, which corresponds to capacity to perform light work; the ALJ found these opinions "persuasive." (Tr. 34–35; *see also* Tr. 102–05, 121–23.) The ALJ considered an October 2021 joint opinion co-signed by his treating primary care physician, Elizabeth Muhiire-Ntaki, M.D., and an examining physical therapist, Steven W. Broker, P.T., who found that

---

pt. 404, subpt. P, app. 2, commonly referred to as the "grid rules" based on the grid-like format of its guidance. *See generally* 20 C.F.R. § 416.969; Soc. Sec. Ruling 83-10, 1983 WL 31251. With all other vocational factors remaining the same, the grid rules directed a finding of "not disabled" if Tirado-Negron were found capable of performing a full range of light work, but a finding of "disabled" if he were found capable of performing only sedentary work. *Compare* Medical-Vocational Guidelines Rule 202.14 (light work) *with* Rule 201.14 (sedentary work), 20 C.F.R. pt. 404, subpt. P, app. 2.

Tirado-Negron was capable of lifting or carrying no more than ten pounds, which corresponds to a capacity to perform sedentary work; the ALJ found this opinion "not . . . persuasive." (Tr. 36; *see also* Tr. 1190–1204.) Having rejected the other medical opinion evidence as "not persuasive," and having found the state agency medical consultants' opinions "persuasive," the ALJ's ultimate finding that Tirado-Negron retained a residual functional capacity to perform a limited range of light work necessarily relied on the state agency medical consultants' opinions.

But an RFC form prepared by a non-examining state agency medical consultant cannot constitute substantial evidence where it is not based upon the full medical record before the ALJ at the time of hearing and decision, particularly where the medical evidence suggests a deterioration in the claimant's condition. *See Frankl v. Shalala*, 47 F.3d 935, 937–38 (8th Cir. 1995); *McCoy v. Colvin*, No. 15-CV-00629, 2016 WL 3031826, at *6 (M.D. Pa. May 25, 2016); *Kroh v. Colvin*, No. 13-CV-01533, 2014 WL 4384675, at *21 (M.D. Pa. Sept. 4, 2014); *Oliver v. Astrue*, No. 07-1733, 2008 WL 4646125, at *2 (W.D. Pa. Oct. 17, 2008).

Here, the state agency medical consultants' assessments were recorded in August 2019 and March 2020, more than eighteen months

before the ALJ's decision on October 27, 2021. In the intervening period, and just a few weeks before the ALJ's decision, Dr. Muhiire-Ntaki and PT Broker conducted a new functional capacity evaluation on October 5, 2021, finding significantly greater exertional, postural, and manipulative limitations. (*See* Tr. 1190–1204.) In finding this opinion "not persuasive," the ALJ noted that it was not consistent with certain clinical findings, including various findings that Tirado-Negron exhibited 5/5 strength in his hips and extremities, a "negative Patrick's test," and other normal findings. But the ALJ did not provide any citation to identify where these clinical findings could be located in the record. (*See* Tr. 36.)

As best as we are able to discern from the administrative record, the most recent documentation of such findings is a February 21, 2020, treatment note reflecting the plaintiff's condition one month before the most recent state agency medical consultant's opinion, but more than eighteen months before the ALJ's decision. (*See* Tr. 818–25.) The October 2021 functional capacity evaluation itself documents significantly more limited strength and range of motion findings on examination, just weeks before the ALJ's decision. (*See, e.g.*, 1201–02.)

Based on this record, in which Tirado-Negron's physical condition

and functional capacity appears to have deteriorated in the intervening period of more than eighteen months, the state agency medical consultants' opinions simply do not constitute substantial evidence of Tirado-Negron's RFC at the time of the ALJ's October 2021 decision, as they were not based on his full medical treatment record.

Under the circumstances presented, we are unable to conclude that substantial evidence supports the ALJ's RFC determination and, as a consequence, his step-five determination that, considering the claimant's age, work experience, and RFC, he can perform other work that exists in significant numbers in the national economy.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Tirado-Negron was not disabled is not supported by substantial evidence. Accordingly, the Commissioner's decision denying his application for supplemental security income benefits will be vacated and the case will be remanded for further proceedings consistent with this opinion.

An appropriate order follows.

Dated: March 29, 2024                    *s/Joseph F. Saporito, Jr.*
                                         JOSEPH F. SAPORITO, JR.
                                         Chief United States Magistrate Judge